IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALEXIS CLINKSCALES o/b/o T.S., | : | CIVIL ACTION |
| | : | |
| Plaintiff | : | |
| v. | : | |
| | : | |
| CAROLYN W. COLVIN, | : | |
| Acting Commissioner of the | : | |
| Social Security Administration, | : | |
| | : | |
| Defendant | : | No. 15-5509 |

### REPORT AND RECOMMENDATION

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                        December 20, 2016

Alexis Clinkscales ("Plaintiff") brings this action on behalf of her minor daughter, T.S., seeking judicial review, pursuant to 42 U.S.C. §§ 405(g), 1383(c), of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), denying T.S.'s application for Supplemental Security Income ("SSI") childhood disability benefits under Title XVI of the Social Security Act. Plaintiff has filed a brief in support of her request for review, the Commissioner has responded to it, and Plaintiff has filed a reply. For the reasons set forth below, it is recommended that Plaintiff's Request for Review be granted, and that this case be remanded for further action, as directed in this Court's order.

## I.    PROCEDURAL HISTORY[1]

On September 28, 2012, Plaintiff filed an application for SSI on behalf of T.S., alleging disability, since December 1, 2011, caused by developmental delay and anger problems. R. 11,

---

[1] The court has reviewed and considered the following documents in analyzing this case: Plaintiff's Brief and Statement of Issues in Support of Request for Review ("Pl. Br."), Defendant's Response to Request for Review of Plaintiff ("Resp."), Plaintiff's Reply Brief ("Reply"), and the administrative record ("R."). Additionally, this court has considered the arguments of counsel, advanced during oral argument held on September 8, 2016 and reflected in the Notes of Testimony ("N.T.").

136.  Her claim was denied initially so Plaintiff requested a hearing.  R. 11.  On February 25,

2014, a hearing was held before Nadine Overton, Administrative Law Judge ("the ALJ").  *Id.*

Plaintiff, represented by Jonathan Stein, testified at that hearing.  R. 32-63.  On April 18, 2014,

the ALJ, using the sequential evaluation process for disability, issued an unfavorable decision.

R. 11-30.  On August 17, 2015, the Appeals Council denied Plaintiff's request for review,

making the ALJ's findings the final determination of the Commissioner.  R. 1-3.  This case was

referred to the undersigned by the Honorable Berle M. Schiller, under the authority of 28 U.S.C.

§ 636(b)(1)(B), for preparation of a Report and Recommendation.

## II.    FACTUAL BACKGROUND

### A.    Personal History

T.S., born on December 28, 2010, was eleven (11) months old on the alleged onset date

and only three (3) years old at the time of the administrative hearing.  R. 14.  At the time of the

hearing, T.S. lived with her mother and four (4) year-old brother.  R. 44, 123.

### B.    Plaintiff's Testimony

At the administrative hearing, Plaintiff testified that T.S. had difficulties in the areas of

communication and retaining information.  R. 37.  At the age of one, T.S. was evaluated for her

difficulty absorbing information and provided with speech therapy one hour each day and special

instruction once per week by Child Link.  R. 37-38.  At age two-and-a-half, Elwyn began

providing similar services two hours daily at The Early Learning Center, T.S.'s daycare center.

R. 38-39.  Additionally, speech therapist Noelle Renner provided in-home services.  R. 39.

T.S. has difficulty retaining information.  She does not remember colors, numbers, letters

of the alphabet, or names of objects.  She uses signals – including pointing and crying - to

communicate what she needs or wants.  R. 40.  T.S. reportedly recognizes certain articles of clothing, but cannot name them.  She cannot count to three without assistance.  R. 41.

T.S. plays well with her brother, but not other children.  R. 41.  She is prone to tantrums when asked to share.  R. 42.  She does not appear to understand what other children say to her. *Id.*  At the time of the hearing, T.S. had been at her then current daycare center for one month, but did not play with the other children.  R. 43.  At daycare, T.S. had issues separating from her mother; she did not follow directions or listen.  R. 44.

T.S.'s tantrums include throwing objects, and are triggered by frustration stemming from her difficulty understanding spoken language and retaining information.  R. 45-46.

In terms of completing tasks, such as putting away clothes or toys, T.S. begins a task, but becomes easily distracted, rarely finishing.  R. 46.  When prompted to continue, she will throw a tantrum.  R. 47.

With respect to caring for herself, T.S. reportedly occasionally played with knives, attempting to scare her brother with them.  R. 47.  She, also, still puts inedible items into her mouth, such as barrettes, paper and smaller toys.  R. 48.  Outside, she runs away from her mother, seemingly unaware of the danger.  R. 48.  Plaintiff explains to T.S. that these behaviors are wrong, but T.S.'s inability to retain information results in repetition of these dangerous behaviors.  R. 49.

Upon questioning by the ALJ, Plaintiff stated that T.S. tried to repeat words spoken to her, but could not correctly do so.  She understands "no no," but not "bye bye," as she does not appear to distinguish between a person stepping out of a room, or leaving a place altogether.  R. 51.  T.S. does not combine words to make requests – she uses one word and points.  R. 51.  She does not use words such as me, you, I or my.  R. 51.  She recognizes cartoon characters

(SpongeBob, Dora the Explorer) but cannot say their names. She cannot tell her mother what foods she likes, but can ask for a drink. R. 52, 53. When her clothes are wet or soiled, she will throw a tantrum, and non-verbally express her discomfort. R. 53. She is not toilet trained. She can point to a toilet to indicate a need, but cannot ask to go to the bathroom. R. 54. T.S. can identify her nose and ear, but no other body parts. R. 54.

When T.S. speaks, people outside of her family rarely understand what she is saying. R. 58. She becomes frustrated when she is not understood and throws a tantrum or retreats to her mother. R. 58. Plaintiff described T.S.'s habitual manner of speaking as "jibber jabber talk." R. 60.

Physically, T.S. can climb stairs holding a railing. R. 55. She frequently falls over when walking on level pavement. R. 55. She can drink from a regular cup. R. 55. T.S. does not pull up her pants or untie shoelaces; she washes her hands but cannot dry them. R. 56.

A typical day for T.S. reportedly includes throwing tantrums while dressing in the morning and preparing for bed in the evening. She either eats her meals or throws her plate. On her way to daycare, she runs away from her mother and knocks on people's doors. At daycare, T.S. prefers to stay with her mother. At home, she watches television. R. 58-59.

## III. THE ALJ'S FINDINGS

Plaintiff alleges disability based on speech and language development delays. In concluding that T.S. was not disabled, the ALJ made the following findings:

1.    [T.S.] was born on December 28, 2010. Therefore, she was an older infant on September 28, 2012, the date application was filed, and is currently a preschooler (20 CFR 416.926a(g)(2)).

2.    [T.S.] has not engaged in substantial gainful activity since September 28, 2012, the application date (20 CFR 416.924(b) and 416.971 et seq.).

3.      [T.S.] has the following severe impairment: speech and language developmental delay (20 CFR 416.924(c)).

4.      [T.S.] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix I (20 CFR 416.924, 416.925 and 416.926).

5.      [T.S.] does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a).

6.      [T.S.] has not been disabled, as defined in the Social Security Act, since September 28, 2012, the date the application was filed (20 CFR 416.924(a)).

R. 14, 30.  Thus, the ALJ determined that T.S.'s severe impairment did not meet or medically equal a listed impairment.  Moreover, the ALJ determined that T.S.'s impairment did not "functionally" equal a listing, because T.S. did not suffer "extreme"[2] limitations in any of the six functional domains, R. 30, and suffered "marked"[3] limitations in only one domain – her ability to interact and relate with others.  R. 16, 23.[4]

---

[2] A child has an "extreme" limitation in a domain when his or her impairment or combination of impairments interferes "very seriously" with his or her ability to independently initiate, sustain, or complete activities.  20 C.F.R. § 416.926a(e)(3).   A child's functioning may be "very seriously" limited when his or her impairments or combination of impairments limit only one activity, or when the interactive or cumulative effects of the impairments limit several activities.   An "extreme" limitation is a limitation that is "more than marked."  "Extreme" is the rating given to the worst limitations, although it does not necessarily mean that the child is incapable of functioning.  *Id.*  The ALJ discusses the regulations pertaining to the meaning of "extreme" at R. 13-14.

[3] A child has a "marked" limitation in a domain when his or her impairments or combination of impairments interferes "seriously" with the ability to independently initiate, sustain, or complete activities.  20 C.F.R. § 416.926a(e)(2).   A child's functioning may be "seriously" limited when his or her impairments or combination of impairments limit only one activity, or when the interactive or cumulative effects of the impairments limit several activities.  A "marked" limitation is a limitation that is "more than moderate," but less than "extreme."  *Id.*  The ALJ discusses the regulations pertaining to the meaning of "marked" at R. 13.

[4] The ALJ found "less than marked" limitation in three domains  (acquiring and using information, R. 19; attending and completing tasks, R. 21; and caring for yourself, R. 28).  The parties agree that T.S. exhibited no limitation in the following domains of functioning: moving and manipulating objects, and physical health and well-being.

## IV.    DISCUSSION

### A.    Standard of Review

Upon review of the ALJ's decision, the district court may "enter, upon pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing" pursuant to sentence four of § 405(g).  42 U.S.C. § 405(g).  Additionally, the court may remand a case for a calculation and award of benefits where appropriate.  *Mills-Sorrells v. Colvin*, 153 F.Supp.3d 703, 713-14 (E.D. Pa. 2015) (citing *Allen v. Bowen*, 881 F.2d 37, 44 (3d Cir. 1989) (directing award of benefits where claimant had established *prima facie* case of entitlement to benefits and record was fully developed); *Gilliland v. Heckler*, 786 F.2d 178, 184 (3d Cir. 1986) (to avoid further delay, and where substantial evidence indicates claimant is entitled to benefits, court may direct award of benefits).

Judicial review of the Commissioner's final decision is as follows.  The Commissioner's findings of fact will not be disturbed, if they are supported by substantial evidence.  *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).  Substantial evidence is not "a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation omitted).  It is more than a mere scintilla of evidence but may be less than a preponderance.  *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).  Overall, this test is deferential to the ALJ and the court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo*, might have reached a different conclusion.  *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987).

Indeed, the court is not permitted to weigh the record evidence. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). On the other hand, the Commissioner's legal conclusions are subject to *de novo* review. *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431.

**B.      Determination of Disability in a Child**

The Social Security Regulations provide the following three-step sequential evaluation for determining whether or not a child is disabled:

1.      If the child is engaged in any substantial gainful activity, a finding of not disabled is directed. Otherwise, proceed to Step 2. *See* 20 C.F.R. § 416.924(b).

2.      If the child is found not to have a medically determinable impairment that is severe, or is found to have a slight abnormality, or combination of slight abnormalities that cause no more than minimal functional limitations, a finding of not disabled is directed. *See* 20 C.F.R. § 416.924(c).

3.      If the child's impairment meets, medically equals or functionally equals any listing in the Listing of Impairments in Appendix I of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed. *See* 20 C.F.R. § 416.924(d)(1).

To assess functional equivalence at step three, the Commissioner first assesses the interactive and cumulative effects of all of the child's impairments on the child's activities. 20 C.F.R. § 416.926a. In so doing, the Commissioner considers factors including (1) how well the child can initiate and sustain activities, how much extra help she needs, and the effects of structured or supportive settings, 20 C.F.R. §§ 416.924a(b)(5), 416.926a(a)(1); (2) how the child functions in school, 20 C.F.R. § 416.924a(b)(7), 416.926a(a)(2); and (3) the effects of the child's medications or other treatments, 20 C.F.R. § 416.924a(b)(9), 416.926a(a)(3).

7

The Commissioner then considers how the child functions in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1).  To determine the extent of limitation in a particular domain, the Commissioner compares the child's functioning to the functioning of children of the same age who do not have impairments.  20 C.F.R. §§ 416.924b(a)(1), 416.926a(b)(2).  To establish functional equivalence, the child must have a medically determinable impairment or combination of impairments that result in either an "extreme" limitation in one domain, or "marked" limitations in two domains.  20 C.F.R. § 416.926a(d).[5] *See Mills-Sorrells*, 153 F.Supp.3d at 708.

### C.    Review of the Administrative Law Judge's Decision

As noted, the ALJ found that the delay in language and speech development experienced by T.S. constitutes a severe impairment, but one that is not disabling inasmuch as her impairment does not impose an extreme limitation in any domain of functioning, and imposes a "marked" limitation only in the domain of interacting and relating with others.  R. 23.  Plaintiff disagrees, arguing that the evidence of record establishes that T.S. suffers at least "marked" limitation in two or more domains of functioning, thereby establishing disability.  Moreover, Plaintiff contends that, as a matter of law, T.S.'s impairment medically equals a listing, again establishing disability.

Specifically, Plaintiff attributes the following legal errors to the ALJ: (1) failure to accord controlling weight to the opinion of T.S.'s speech/language pathologist, a treating medical source, that T.S. suffered at least "marked" limitation in two domains - acquiring and using information and attending and completing tasks, in addition to the domain of interacting and

---

[5] For definitions of "extreme" and "marked" limitations, *see* n.2 and n.3, *supra*.

relating with others; and (2) failure to consider T.S.'s records in light of the controlling Social Security Ruling, SSR 98-1p, which would have required a finding that T.S.'s impairment constituted an extreme limitation that medically equals a listing. According to Plaintiff, these errors warrant reversal and an award of benefits. The Commissioner counters that the ALJ's decision was supported by substantial evidence, that evidence of record permitted the ALJ to discount the opinion of T.S.'s treating speech therapist, and that the ALJ's omission of specific discussion of the controlling Social Security Ruling was not fatal error, because her analysis reflected the spirit and teachings of that Ruling. For the reasons that follow, this court agrees with Plaintiff and recommends remand.

> **1.** **The ALJ Committed Reversible Legal Error When She Accorded Controlling Weight to Yearly Evaluations and Improperly Discounted the Opinion of T.S.'s Speech/Language Pathologist.**

Plaintiff faults the ALJ for failing to accord controlling weight to the opinion of T.S.'s speech therapist, Noelle Renner, MS, CF, SLP, and, instead, according controlling weight to "yearly evaluations." Pl. Br. at 11-29. The Commissioner argues that substantial evidence, including the opinion of another speech therapist, supports the ALJ's treatment of Renner's opinion and her decision to credit the evaluations identified. Resp. at 6-10; N.T. This court disagrees with the Commissioner.

While "[t]reating physicians' reports should be accorded great weight," they are entitled to controlling weight only where their conclusions are well supported by medical evidence of record, and are not inconsistent with other substantial evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (citing *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir. 1987). Moreover, the opinion of a treating source cannot be completely discounted unless the ALJ identifies other medical evidence of record that contradicts that opinion, and may be accorded less weight only

when such treatment is explained, again based on evidence of record.  *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001); *Plummer*, 186 F.3d at 429 ("the ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided.").  Additionally, "opinions from other acceptable medical sources may be entitled to great weight, and may even be entitled to more weight than a treating source's opinion in appropriate circumstances, [but] opinions from sources other than treating sources can never be entitled to 'controlling' weight."  SSR 96-2p, 1996 WL 374188 (July 2, 1996).

Renner provided speech therapy, including therapy provided at home, to T.S. for a period of at least six months prior to the administrative hearing.  R. 39-40.  Thus, she was a treating provider, indeed, the only treating provider involved in T.S.'s care and assessment.  Moreover, as a licensed speech-language pathologist, she was an acceptable medical source for establishing a speech/language impairment.  20 C.F.R. § 416.913(a)(5).  Renner contributed to the November 2013 annual evaluation of T.S., and administered the appropriate Developmental Assessment of Young Children.  R. 271-96.  Additionally, in February 2014, Renner provided test results and a comprehensive functional assessment in support of T.S.'s application for benefits.  R. 349-55.  In the February 2014 functional assessment, Renner opined that T.S. showed "extreme" limitations in the domain of acquiring and using information and "marked" limitations in the domains of attending and completing tasks and interacting and relating with others.  R. 350-52.[6]  The ALJ agreed that T.S. experienced "marked" limitation in the domain of interacting and relating with others, but assessed "less than marked" limitation in the domains of acquiring and using

---

[6] Because the ALJ found that T.S. experienced "marked" difficulty in the domain of interacting and relating with others, and Plaintiff does not challenge that finding, it is not necessary to examine the ALJ's treatment of Renner's opinion with respect to T.S.'s limitations in that domain.

information and attending and completing tasks, giving "little" weight to Renner's opinion in this regard. *See* R. 17, 18. Instead, the ALJ gave "controlling" weight to "yearly evaluations." R. 17. Her treatment of the "yearly evaluations" was reversible error.

The ALJ accorded "controlling" weight to the "yearly evaluations" and opinions contained therein. R. 17. The ALJ appears to reference the results of the November 2012 initial evaluation completed for purposes of creating an IEP for T.S., Exhibit 3F; a February 2013 evaluation, Exhibit 3F; and the DAYC (Developmental Assessment of Young Children) scores included in an assessment performed in January 2014 following T.S.'s attainment of the age of 3, Exhibit 9F. R. 16-17. She does not, in this section of her discussion, reference the results of the November 2013 annual re-evaluation, to which Renner contributed, Exhibit 7F. *See* R. 16. Plaintiff alleges legal error with this decision, as SSR 96-2p specifically states that "[a]lthough opinions from other acceptable medical sources may be entitled to great weight, and may even be entitled to more weight than a treating sources's opinion in appropriate circumstances, *opinions from sources other than treating sources can never be entitled to 'controlling weight*.'" SSR 96-2p, 1996 WL 374188, at *2 (July 2, 2996) (emphasis added). The ALJ's explanation that the referenced evaluations provide a thorough review of T.S.'s performance in all domains, and reflect longitudinal development, R. 17, cannot overcome her failure to weigh that medical evidence in accordance with applicable Social Security Regulations. This was reversible error.

Plaintiff questions the ALJ's description of the cited assessments as "yearly" evaluations, arguing that, since assessments were performed in November 2012 and 2013, the January 2014 evaluation is not truly an annual evaluation, although it was apparently treated as such by the ALJ. Pl. Br. at 18. Moreover, given that the DAYC was performed in both November 2013 and February 2104, the latter results, to the extent they show improvement, are not reliable as a result

11

of the "practice effect" phenomenon, which is recognized by the Commissioner.  Pl. Br. at 19.  In short, when a child is administered the same test within a short period (as here) it is not surprising – and not always reliable evidence – when the test results show improvement.  *See* Program Operations Manual System (POMS) DI 24515.055, "Evaluation of Specific Issues – Psychological/Psychometric Testing, ¶ C, Pl. Br., Appendix C.  The ALJ does not discuss the practice effect or its implications in this case, yet appears to find significant T.S.'s January 2014 DAYC score of 83 in Cognitive Development, referencing it as a basis for finding less than marked limitation in the domains of acquiring and using information and attending and completing tasks.[7]  *See* R. 16, 20, 22.

Additionally, the ALJ appears to confuse the DAYC scores included in the November 2013 and January 2014 reports.  Discussing T.S.'s limitations in the domain of acquiring and using information, the ALJ attributes the score of 83 in Cognitive Development to the November 2013 assessment, when, in fact, that number appears in the January 2014 assessment.  *See* R. 20; 337.  Further, the ALJ does not explain why the January 2014 scores should be given more weight than the November 2013 scores (which are not discussed at all), which were provided by Renner herself, based on her assessment and her treatment of T.S.  *See* R. 279 (November 2013 DAYC results, test performed by Renner, noting 32% delay in Communication Development).

The decision to accord controlling weight to these evaluations is further undermined by the ALJ's failure to identify any "acceptable medical source" for the opinions expressed in the foregoing "yearly evaluations," whose opinion may have contradicted Renner's.[8]  *See* R. 17.

---

[7]  Plaintiff also notes that the DAYC is used "to identify children with possible delays in areas mandated for assessment and intervention by the Individuals with Disabilities Education Improvement Act (IDEA)."  Pl. Br. at 20 n.15  (quoting   http://www.mhs.com/product.aspx?gr=cli&prod=dayc&id=overview).     It  is  not  a  functional assessment.

[8]  The ALJ does not acknowledge that Renner participated in the November 2013 evaluation and does not explain how Renner's own opinions included in this "yearly evaluation" fail to support her February 2014 functional assessment of T.S.

Where no other medical evidence of record is inconsistent with a treating source's opinion, that opinion is to be accorded controlling weight.  20 C.F.R. §§ 416.902, 416.927a ; SSR 96-2p.

Renner is the sole medical source identified by the ALJ.[9]  *See* R. 16-19-20, 21-22.  At oral argument, the Commissioner noted that speech therapist Thelma Sagan contributed to the January 2104 evaluation to which the ALJ accorded great weight, and urged consideration of the contents of that evaluation as a medical opinion on a par with Renner's.  N.T. 25.  The Commissioner argued that the ALJ's decision to accord greater weight to the opinion of one speech pathologist over another was appropriate.  N.T. 28.  This argument is unavailing, because the ALJ did NOT credit the opinion of one medical source over another.  The ALJ specifically stated that she gave controlling weight to the "yearly evaluations," apparently including the January 2014 evaluation in this group.  R. 17.  However, the ALJ does not acknowledge the contribution of a speech pathologist to the January 2014 evaluation.  *See* R. 16, 20.  The ALJ does not mention Sagan's name in her decision and does not proffer, as a reason for according

---

[9] The ALJ did discuss the December 10, 2012 assessment provided by state agency consultant, Richard Fretz, Ph.D. R. 16 (citing Exhibit 1A, R. 64-70).  Therein, citing the November 20, 2012 initial evaluation performed to create an Individualized Education Program for T.S., Fretz acknowledged that T.S., at the age of nearly two years old, "points to what she wants and says yes and mom, the only words she says clearly."  R. 66 (citing Exhibit 5F, R. 217-34).  Fretz acknowledged that T.S. "has at least 25% delay," and identified her speech and language impairment as severe.  *Id.*  He found, nonetheless, that she experienced less than marked limitation in the domain of interacting and relating with others, and no limitation in any other domain.  R. 66-67.  Thus, he found that her impairment did not functionally equal a listing.  R. 67.  The ALJ gave partial weight to Fretz's opinion that "[T.S.] did have some developmental delays, [though] they were not severe compared to other children her age."  R. 16 (citing Exhibit 1A).  She acknowledged that Fretz's opinion did not adequately reflect the degree of limitation supported by evidence received at the hearing level.  R. 16.

As a state agency consultant, Fretz's opinion was entitled to significant consideration in light of his "expertise in what constitutes a disability for social security purposes."  *Packard v. Astrue*, 2012 WL 4717890, at *4 (E.D. Pa. Oct. 4, 2012) (citing *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2012)).  However, as Plaintiff notes, Fretz is a psychologist, not a speech therapist, and therefore is an acceptable medical source "for purposes of establishing intellectual disability, learning disabilities, and borderline intellectual functioning only."  20 C.F.R. § 416.913(a)(2).  He was not a treating provider.  Moreover, his assessment was performed well before Renner's November 2013 evaluation and testing and her February 2014 assessment, and before the January 2014 DAYC testing – the "yearly evaluations" to which the ALJ accords controlling weight.  The ALJ did not explain whether or how these factors affected her decision to accord Fretz's opinion "partial" weight.  This is significant, because she relied, in part, on Fretz's opinion to find that T.S. had less than marked limitation in the domains of acquiring and using information and attending and completing tasks.  R. 19, 21.

diminished weight to Renner, the contradictory opinion of another medical source.  It is not clear that the ALJ was aware that any speech pathologist, except Renner, had evaluated T.S.[10]  "The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based."  *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1942).  Further, "'[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision;' the Commissioner may not offer a post-hoc rationalization."  *Keiderling v. Astrue*, 2008 WL 2120154, at *3 (E.D. Pa. May 2, 2008) (quoting *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).  Thus, the existence of another medical opinion, absent the ALJ's consideration of it as such, cannot serve to support the ALJ's decision to accord diminished weight to Renner's opinions, or controlling weight to test scores.

For all of the above reasons, this court finds that the ALJ's decision to accord controlling weight to "yearly evaluations" was error, requiring remand.

This court also finds error in the weight accorded to Renner's opinion as to T.S.'s limitations in the domains of acquiring and using information and attending and completing tasks.

In her February 2014 assessment, Renner opined that T.S. had marked to extreme limitations in the domain of acquiring and using information.  Exhibit 11F, R. 349-55.  She checked boxes that evaluated T.S. as having marked to extreme difficulty with the majority of skills in this domain.  Specifically, Renner found T.S. exhibited extreme difficulty with the following: rhymes words or the sounds of words; recognizes own name in script or cursive; able to repeat home address; can describe family routines in detail.  R. 350.  She also found that T.S. had marked difficulty with the following skills: understands words about space, size, or time

---

[10] The Commissioner's Response to Plaintiff's Request for Review does not advance any argument based on Sagan's contribution to the January 2014 evaluation.

(e.g., in/under, big/little, morning/night); uses words to ask questions, give answers, follow directions, describe, explain, and tell stories; recognizes colors, shapes, numbers to 10. *Id.* Renner also provided the following narrative evaluation of T.S.'s limitations in this domain:

> [T.S.] struggles with grasping basic concepts (i.e., in, under, next to, etc.), recalling prior events, and verbally expressing herself. She is able to attend to an entire story, but she requires multiple prompts to follow 2-step directions (ex: "Close the book and put it away.") [T.S.] often requires prompting to use words to communicate; when [T.S.] does use spontaneous speech, it is largely unintelligible.

*Id.*

The ALJ assigned little weight to Renner's opinion, finding it inconsistent with objective testing, presumably the January 2014 DAYC scores. R. 17, 18. Additionally, as noted, she gave controlling weight to the opinions expressed in the "yearly evaluations," finding them to conflict with Renner's opinion, which the ALJ found "overestimated the effect of [T.S.'s] speech delay on other domains." R. 17. The ALJ's findings, however, are drawn into question by the record, in particular the January 2014 evaluation credited by the ALJ, which includes opinions supporting Renner's findings of marked to extreme limitation in the area of acquiring and using information. For example, Renner specifically stated in her narrative: "[T.S.] requires multiple prompts to follow 2-step directions (ex: 'Close the book and put it away.')." R. 350. The January 2014 evaluation states: "[T.S.] did not respond to two-level unrelated directions." R. 334. Similarly, Renner found "marked" limitation in T.S.'s understanding of words about space, size or time, such as in/under, big/little, and morning/night. R. 350. The January 2014 evaluation notes that "[T.S.] demonstrated an understanding for location concepts for in/on, but not for beside/under. . . . [T.S.] did not demonstrate an understanding for the size concept of big/little as she did not hand the correct sized object upon request." R. 334. Again, Renner

found "marked" limitation in T.S.'s ability to use words to ask questions, give answers, follow directions, describe, explain and tell stories. R. 350. The January 2014 evaluation states that, "[T.S.] did not describe what she was doing or ask many questions. Additionally, [T.S.] made her wants and needs known through pointing to what she wanted or by getting things on her own." R. 334. The ALJ does not address these findings, or explain how they are in conflict with Renner's, or how they justify discounting Renner's opinion. This was reversible error. *See Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981) ("the ALJ cannot reject evidence for no reason or for the wrong reason, [thus] an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.").

Renner's opinion was supported by the non-medical opinion of T.S.'s Pre-School Teacher/Special Education Teacher, Donna Reaves, whose February 2014 responses to the SSI Child Disability Functional Questionnaire noted that T.S. experienced marked difficulty with some of the same skills identified by Renner: ability to recognize colors, shapes, numbers up to 10 and her ability to recognize her own name in script. Additionally, Reaves found marked difficulty in T.S.'s ability to recall prior events or learned lessons, and her ability to match colors, shapes and letters. *Id.* Her narrative comment is as follows:

> [T.S.] show[s] difficulty completing tasks children her age can do, even when explained and walked threw [sic] what she is suppose[d] to do [she] shows little comprehension.

*Id.* The ALJ accorded little weight to Reaves' opinion, noting that at the time the opinion was provided, T.S. had attended daycare only one month and stating that Reaves' opinion was "not supported by the longitudinal record and evaluation completed in February 2014." R. 17. For the reasons explained above, the February 2014 evaluation includes evidence that supports the

opinion of Reaves', which is in accord with that of Renner.   On remand, the ALJ should reevaluate and explain her assessment of Reaves' opinion.[11]

In her February 2014 assessment, Renner opined that T.S. had marked limitations in the domain of attending and completing tasks.   Exhibit 11F, R. 349-55.   Specifically, she checked boxes indicating that T.S. had marked difficulty her ability to (a) filter out distractions and to remain focused on task consistently; (b) after interruptions, return to a task, without reminders to finish; and (c) take turns and appropriately wait turn.   R. 352.   Renner's narrative evaluation of T.S.'s limitations in this domain follows:

> [T.S.] is easily distracted.   She is able to sustain her attention longer for her desired activities, but she requires frequent prompting to complete tasks and to avoid distractions."

*Id.*[12]

Although the ALJ acknowledged Renner's opinion, she appears not to have credited it. R. 21.   The ALJ determined that T.S. showed less than marked limitations in this domain, relying on the opinion of state agency consultant Fretz, who found no limitation at all in this domain, the

---

[11] Renner's opinion was further supported by the comments provided by Plaintiff in the SSI Child Disability Functional Questionnaire completed in February 2014, which noted extreme limitations in virtually all areas of this domain and included the following narrative comment:

> She doesn't interact w. other children.   She can only count to three.   She's not aware of colors & numbers.   She only knows some of her body parts, doesn't know names of clothes (pants, shirts, etc.).   She doesn't retain or remember information (her name), ABC's, colors, names of objects.

R. 343.

[12] Renner's opinion was supported by the opinion of T.S.'s teacher, who noted marked limitation in more than half of the skills encompassed in this domain, and commented, "[T.S.] shows low tolerance when doing what she is told to do.   She loses focus easily and don't complete most tasks when asked."   R. 359.   The ALJ does not acknowledge this comment in her discussion of the evidence relevant to this domain.   *See* R. 21-22.   The ALJ does acknowledge Plaintiff's comments, which support Renner's opinion: "[T.S.] gets frustrated a lot & she cries out when she gets frustrated.   When attending to [a] task or trying to complete it she gets very frustrated.   After teaching her how to complete the task properly, she then forgets what she was told.   She never completes the task.   She may start a task like putting away toys or clothes, but never finishes it."   R. 345.   It appears the ALJ discounted this evidence in light of other evidence of record.   *See* R. 21-22.

January 2014 DAYC score of 83, and comments included in the November 2012, November 2013, and January 2014 assessments.  R. 21-22.

Plaintiff contends that the ALJ's findings with respect to T.S.'s limitations in this domain are erroneous for the same reasons as are her findings with respect to T.S.'s limitations in the domain of acquiring and using information.  The ALJ's discussion of T.S.'s ability to attend and complete tasks is not at odds with the record evidence to the same extent as her discussion of T.S.'s ability to acquire and use information, though some relevant evidence supportive of Renner's opinion is excluded without explanation.  *See, e.g.*, November 2013 assessment, at R. 277 ("[T.S.] demonstrates difficulty sharing and taking turns."); *compare* Renner, at R. 352, who found marked difficulty in T.S.'s ability to take turns.  On remand, the ALJ is to reconsider her evaluation of T.S.'s limitations in this domain.

      **2.**      **The ALJ Committed Legal Error When She Failed to Consider SSR 98-1p to Determine the Severity of T.S.'s Expressive and Receptive Language Delay.**

Plaintiff contends that the ALJ erred as a matter of law when she did not consider the evidence of record in light of the directives contained in Social Security Ruling 98-1p.[13]

---

[13] SSR 98-1p is titled "Determining Medical Equivalence in Childhood Disability Claims When a Child has Marked Limitations in Cognition and Speech" and can be found at https://www.ssa.gov/OP_Home/rulings/ssi/02/SSR98-01-ssi-02.html.  Relevantly, SSR 98-1p states, at Section III.C. :

> An impairment(s) that causes an "extreme" limitation in cognition or in speech is always of listings-level severity and, thus, will always meet or equal the severity of a listing.
>
> . . .
>
> 2. Speech.  Listing 2.09 recognizes disability on the basis of an "[o]rganic loss of speech due to any cause with inability to produce by any means speech which can be heard, understood, and sustained." This listing applies to children as well as adults, and describes the most extreme limitation of speech.  However, children with less serious limitations of speech than in Listing 2.09 may still have an "extreme" limitation, as noted in Table 1, and, therefore, may also have impairments that meet or equal the requirement of a listing.

According to Plaintiff, evaluation of the evidence under SSR 98-1p would have required a finding that T.S. suffers "extreme" limitation as a result of her speech and language development delay.  Because there is no dispute that an "extreme" limitation in one domain of functioning (or "marked" limitation in two domains) means that a child is disabled, *see* 20 C.F.R. § 416.926a(d), Plaintiff argues that the ALJ's error in this regard requires reversal and remand for an assessment of benefits.  Pl. Br. at 7-10, Reply at 2-5.  The Commissioner counters that the ALJ's evaluation of the evidence was supported by substantial evidence, and "was consistent with the requirements of SSR 98-1p."  Resp. at 3-6.  This court finds that the ALJ arguably committed reversible legal error in failing to either consider the evidence in light of SSR 98-1p or explain her decision to omit this analysis.  It is already recommended that this case be remanded for reconsideration of Renner's opinion; upon remand, the ALJ should reconsider the relevant evidence in light of SSR 98-1p.

At step two, the ALJ found that T.S.'s speech and language developmental delay constituted a severe impairment.  Finding of Fact 3, R. 14.  However, the ALJ did not evaluate the record evidence in light of SSR 98-1p.  Table I in SSR 98-1p provides what is essentially a checklist "to provide guidance for determining when a child has 'marked' or extreme' limitations" resulting from speech impairments.  *See Table I - Guidelines for Evaluating Severity of Speech Impairments*.  A child of T.S.'s age exhibits "extreme" limitation of functioning when:

> a. Most messages are not readily intelligible even in context; **and**
> b. Sounds, omission, distortions, or phonological patterns, **or** fluency (rate, rhythm of speech) not typical for this group; **or** significant aberrations in vocal pitch, quality or intensity.
> [and]
> [c.] Gesturing and pointing are used most of the time instead of oral expression, **and**
> [d.] Intelligibility does not improve even with repetition or models, **or** ability to imitate words is limited.

*Id.* (emphasis in original).

According to Plaintiff, the criteria are satisfied by record evidence highlighted in the ALJ's decision, including:   the ALJ recognized that T.S. "would tap an adult to gain their attention, and used jargon often throughout her day using varying inflections and hand gestures to express herself;" T.S. "made her requests known by pointing to an object or retrieving it;" and T.S. "used the two words of "yes" and "mom" clearly.[14] R. 23.[15]   Additionally, the record reflects that, at age three and nearly three months, "[T.S.] struggle[d] with grasping basic concepts (i.e., in, under, next to, etc.), recalling prior events, and verbally expressing herself. . . . she requires multiple prompts to follow 2-step directions (ex: "Close the book and put it away.") [T.S.] often requires prompting to use words to communicate; when [T.S.] does use spontaneous speech, it is largely unintelligible." Exhibit 11F, R. 350.  Additionally at that time, as the ALJ noted,  "[o]verall intelligibility for the speech produced in context was judged to be fair, and intelligibility for out of context speech was poor."  R. 25 (citing Exhibit 9F, January 2014 Evaluation Report, at R. 334).  Plaintiff testified at the administrative hearing that T.S. could not correctly repeat words spoken to her.  R. 51.  Relevantly, the ALJ also acknowledged that "[p]honologic/articulation was not formally tested due to the limited amount of spontaneous speech produced."  R. 25.

---

[14] Fretz made this observation; notably, these were "the only words she said clearly." R. 66.  The ALJ omitted this observation from her discussion. *See* R. 23.

[15] The ALJ references the foregoing evidence in a single paragraph at R. 23-24, wherein she cites to "Id." throughout. *See* R. 23-24.  It is unclear to which specific portions of the record the ALJ refers, although it appears to include the following: Exhibits 1A (the December 2012 report of state agency consultant Roger Fretz), 5F (the November 2012 Initial Evaluation for an Individualized Education Plan with February and March 2013 updates), 10F (the February 2014 Childhood Disability Functional Questionnaire completed by Plaintiff), and 11F (the February 2014 Childhood Disability Functional Questionnaire completed by Noelle Renner, Plaintiff's treating speech psychologist).  Careful review of the entire record suggests that some of the evidence is gleaned from Exhibit 3F (Childlink records, including the Initial Evaluation for IEP found at Exhibit 5F).  On remand, the ALJ is encouraged to be more precise in citing to the record.

The Commissioner counters that the ALJ engaged in an exhaustive examination of the "whole child" by evaluating how T.S. functioned in all settings at all times, as compared to other children of the same age without disabilities, as required.  Moreover, the ALJ assessed the interactive and cumulative effects of T.S.'s impairments in all domains of functioning; considered any help that T.S. required to function; and discussed at length testimony, evaluations, standardized tests, and all available medical and other professional opinion evidence.  Resp. at 3.  It is further the Commissioner's position that the ALJ's comprehensive review of the available evidence was supported by substantial evidence and was "consistent with the requirements of SSR-98-1p."  Resp. at 6.  As such, the Commissioner urges affirmance.

"The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based."  *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1942).  Further, "'[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision;' the Commissioner may not offer a post-hoc rationalization."  *Keiderling v. Astrue*, 2008 WL 2120154, at *3 (E.D. Pa. May 2, 2008) (quoting *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000)).  The Commissioner tacitly concedes that the ALJ did not consider SSR 98-1p by arguing that the ALJ satisfied its requirements with her detailed analysis.  Indeed, review of the ALJ's decision confirms that SSR 98-1p is not referenced.  Moreover, as Plaintiff argues, "[e]ven if supported by substantial evidence [ ], a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.  *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (3d Cir. 2007) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (3d Cir. 2004).

The ALJ identified and discussed other Social Security Rulings in her decision. *See, e.g.*, R. 14-18. The absence of any specific reference to SSR 98-1p suggests that she did not consider the guidance included in that ruling, but because there is no explanation as to why this analysis was omitted, it is unclear whether it was an oversight or was deliberate. The ALJ is required to explain her decision to permit meaningful review, and her failure to do so in this instance is error. However, notwithstanding the obvious applicability of SSR 98-1p to this case, there is no requirement that an ALJ cite any specific Social Security Ruling. *Martinez v. Colvin*, 2015 WL 5781202, at *13 (M.D. Pa. Sept. 30, 2015) ("[N]o rule or regulation requires the ALJ to specifically mention relevant Social Security Rulings when rendering a decision."). *See also Holiday v. Barnhart*, 76 Fed. Appx. 479, 482 (3d Cir. 2003 (non-precedential) (""[W]e are not aware of any duty which requires ALJs to specifically mention relevant Social Security Rulings when rendering a decision on an individuals' claims for Social Security Benefits. More importantly, the ALJ's analysis by and large comported with the approach set forth in Social Security Ruling 99-2p.") Thus, if the analysis performed by the ALJ resulted in a decision that is not likely to be overturned on remand notwithstanding the presence of error, remand is not warranted. *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005).

Though the ALJ's discussion of the evidence, particularly the contents of the "yearly evaluations," was detailed, as noted, there were omissions. *See supra*, Section IV.C.1. Moreover, as demonstrated by Plaintiff, it appears that the ALJ did not take into consideration the rubric set forth in Table 1 of SSR 98-1p. *See also* Reply at 4 (evidence cited by ALJ that T.S. communicates primarily by gesturing and pointing, that her speech is largely unintelligible even on repetition would require a finding of "extreme" limitation under SSR 98-1p). Examination of T.S.'s records under SSR 98-1p could have resulted in a different decision. It is,

therefore, unclear whether the decision rendered is "unlikely to be overturned on remand." As such, and because this case will be remanded to permit the ALJ to reconsider the weight accorded to T.S.'s treating speech pathologist, it is this court's recommendation that on remand, the ALJ consider the evidence pursuant to the directives included in SSR-98-1p.

###   E.   CONCLUSION

A thorough review of the record indicates that the Commissioner's final decision was legally flawed, and unsupported by substantial evidence. Accordingly, I make the following:

### RECOMMENDATION

AND NOW, this 20th day of December, 2016, I respectfully recommend that:

1.   The Report and Recommendation be **APPROVED** and **ADOPTED**:

2.   That Plaintiff's Request for Review be **GRANTED**;

3.   That this case be **REMANDED** to the Commissioner of Social Security, pursuant to sentence six of 42 U.S.C. § 405(g), so that the Administrative Law Judge can: (a) reassess the weight accorded the opinions of Noelle Renner, treating speech pathologist and Donna Reaves, special education teacher; (b) reconsider the extent of limitation experienced by T.S. in the domains of acquiring and using information and attending and completing tasks; (c) consider the evidence of record in light of the directives contained in SSR 98-1p.

It be so **ORDERED**.


                              s/      CAROL SANDRA MOORE WELLS_____
                                   CAROL SANDRA MOORE WELLS
                                   United States Magistrate Judge